# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| AMANDA TRUEBLOOD,<br>    Appellant, | DOCKET NUMBER<br>DE-0432-21-0099-I-1 |
| v. | |
| NATIONAL CREDIT UNION<br>    ADMINISTRATION,<br>    Agency. | DATE: April 5, 2024 |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Amanda Trueblood</u>, Parker, Colorado, pro se.

<u>Gerard Poliquin</u>, Esquire, <u>Austin Furman</u>, and <u>Jeffrey Zick</u>, Alexandria,
    Virginia, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which affirmed the agency's chapter 43 removal action. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as MODIFIED to clarify the legal standard applicable to the appellant's claim of disability discrimination based on the agency's failure to provide her a reasonable accommodation, we AFFIRM the initial decision.

## BACKGROUND

Effective January 7, 2018, the agency reassigned the appellant from her position as a CU-13 Credit Union Examiner to a position as a CU-13 Consumer Access Analyst, the latter of which fell under the auspices of the agency's Office of Credit Union Resources and Expansion (CURE). Initial Appeal File (IAF), Tab 14 at 266, Tab 35 at 223. The Consumer Access Analyst position required that the appellant serve as a technical advisor on various complex issues. IAF, Tab 35 at 223-25. Her duties included reviewing, analyzing, and recommending "either approving or denying charter conversion requests from [F]ederal credit unions and state-chartered credit unions." *Id.* at 223. The appellant's position also required her to track her workload.[2] *Id.* at 224.

---

[2] As set forth in the initial decision, the appellant was expected to track the status of her work assignments in the agency's "GENISIS" database. IAF, Tab 61, Initial Decision at 5. The GENISIS system, among other things, established standard timelines for each type of work assignment. *Id.*; IAF, Tab 14 at 214-16.

The appellant was rated as fully successful for the appraisal period ending on September 30, 2018. IAF, Tab 14 at 263. However, on May 7, 2019, following a progress review meeting, the appellant's first-line supervisor provided the appellant with a formal memorandum informing her that her performance was substandard. *Id.* at 28-31. Specifically, the memorandum informed the appellant that her performance was lacking in the following three critical elements of her position: (1) Analysis, Decision Making, and Problem Resolution; (2) Written Communication; and (3) Planning, Organizing, and Coordinating. *Id.* at 28-31, 238-39, 242, 246. Approximately 4 months later, on September 9, 2019, the agency notified the appellant that her performance was unacceptable in two critical elements, i.e., (1) Customer Service and Teamwork and (2) Planning, Organizing, and Coordinating, and it placed her on a 60-day Performance Improvement Period (PIP). *Id.* at 19-26, 240, 246. On November 15, 2019, the agency extended the PIP for 30 days, for a total of 90 days. *Id.* at 33. As a result, the PIP period ended on December 13, 2019. *Id.*

On March 27, 2020, the agency proposed to remove the appellant for failure to perform acceptably in two critical elements, i.e., (1) Customer Service and Teamwork and (2) Planning, Organizing, and Coordinating. *Id.* at 7-16. After she responded to the proposed removal both orally and in writing, IAF, Tab 12 at 68-135, Tab 13 at 5-12, by letter dated December 28, 2020, the agency removed the appellant effective January 1, 2021, for failing to meet performance standards in the critical element of Planning, Organizing, and Coordinating[3] only, IAF, Tab 12 at 55, 57-66. In the December 28, 2020 letter, the agency informed the appellant that she had failed "to plan and prioritize [her] workload to ensure assignments were processed within established timeframes; to identify and manage resources required to complete assignments efficiently; and to respond promptly to problems and complete work in a timely manner." *Id.* at 59. The

---

[3] This critical element contained the following expectations for an employee: "Manages time and resources, achieves deadlines, recognizes and responds to changing priorities and circumstances, and adheres to national and regional goals." IAF, Tab 14 at 246.

letter provided specific examples of the appellant's shortcomings in this regard and it discussed, among other things, the appellant's failure to meet the GENISIS timelines for various work assignments. *Id.* at 59-65; IAF, Tab 14 at 214-16.

The appellant appealed the agency's removal action to the Board and requested a hearing on the matter. IAF, Tab 1 at 2. On appeal, the appellant raised the affirmative defense of disability discrimination based on the agency's failure to provide her with a reasonable accommodation. IAF, Tab 24 at 4, Tab 30 at 4-8. To this end, she alleged that, in 2018, she had made a series of accommodation requests with the agency based on her generalized anxiety disorder disability.[4] IAF, Tab 30 at 4-5. Specifically, she alleged that she had requested the following accommodations, all of which the agency had improperly denied: (1) reduced work hours, i.e., a 6-hour workday in lieu of an 8-hour workday; (2) reassignment to a vacant Consumer Access Coordinator position within CURE; (3) another leave of absence;[5] (4) a new trainer; and (5) relief from phone work.[6] *Id.* at 6, 12-17.

Following a hearing conducted via Zoom for Government, the administrative judge issued an initial decision affirming the agency's removal action. IAF, Tab 61, Initial Decision (ID) at 1, 30. In so doing, he concluded that the agency proved its charge by substantial evidence. ID at 22-26. Specifically, he found the following: (1) the agency proved that the appellant's performance was unacceptable prior to the PIP; (2) it was undisputed that the

---

[4] The appellant acknowledged that she had also made a request regarding work-related lodging accommodations due to her digestive food allergies; however, she clarified in a prehearing filing that, for purposes of her affirmative defense, she was "limiting her disability to that of [g]eneralized [a]nxiety [d]isorder." IAF, Tab 30 at 6 n.2, n.4.

[5] As set forth in the initial decision, the appellant had previously taken a leave of absence approximately 2 months after her reassignment to the Consumer Access Analyst position, i.e., from March 23 through May 8, 2018. IAF, Tab 61, Initial Decision at 7.

[6] The appellant also requested "[b]eing treated with respect" as an accommodation; however, she did not raise any arguments related to this request before the administrative judge. *E.g.*, IAF, Tab 30 at 15.

Office of Personnel Management (OPM) had approved the agency's performance appraisal system; (3) the agency communicated the relevant performance standards and critical elements to the appellant; (4) the agency warned the appellant of inadequacies with her performance; and (5) the agency offered the appellant "counseling and an opportunity for improvement."[7]  *Id.* The administrative judge also concluded that the appellant had failed to prove her claim of disability discrimination on the basis of the agency's failure to accommodate.  ID at 26-30.  In so concluding, he found that she had failed to show that she is a qualified individual with a disability.  ID at 28.

The appellant has filed a petition for review, the agency has filed a response, and the appellant has submitted a reply thereto.  Petition for Review (PFR) File, Tabs 1, 3-4.  In her petition and reply, the appellant argues that the administrative judge erred in finding that the agency proved its charge and that she failed to prove her failure to accommodate disability discrimination affirmative defense.  PFR File, Tab 1 at 4-21, Tab 4 at 4-11.  She also raises a claim of harmful procedural error.  PFR File, Tab 1 at 20.

## ANALYSIS

To defend an action under chapter 43, the agency must prove the following by substantial evidence:[8]  (1) OPM approved its performance appraisal system and any significant changes thereto; (2) the agency communicated to the appellant the performance standards and critical elements of her position; (3) the

---

[7] We equate the administrative judge's conclusion that the agency offered the appellant "counseling and an opportunity for improvement" with a finding that the agency showed that it provided the appellant an adequate opportunity to demonstrate acceptable performance.  ID at 25; *see Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 15.  Additionally, although the administrative judge did not explicitly find that the appellant's performance standards were valid under 5 U.S.C. § 4302(c)(1) or that her performance remained unacceptable, such findings were implicit in his analysis.  ID at 26-30; *see Lee*, 2022 MSPB 11, ¶ 15.

[8] Substantial evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree.  5 C.F.R. § 1201.4(p).

appellant's performance standards are valid under 5 U.S.C. § 4302(c)(1); (4) the appellant's performance during the appraisal period was unacceptable in one or more critical elements; (5) the agency warned the appellant of the inadequacies in her performance during the appraisal period and gave her an adequate opportunity to demonstrate acceptable performance; and (6) after an adequate improvement period, the appellant's performance remained unacceptable in at least one critical element. *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 15.

<u>We discern no basis to disturb the administrative judge's conclusion that the agency proved its charge.</u>

The appellant challenges the administrative judge's conclusion that the agency proved all of the elements of a chapter 43 action by substantial evidence. PFR File, Tab 1 at 13-21. Specifically, she challenges the validity of her performance standards under 5 U.S.C. § 4302(c)(1) by asserting the following: (1) her performance standards were impermissibly vague; (2) the standards were not objective; and (3) the standards were unattainable. *Id*. We disagree.

Performance standards must, to the maximum extent feasible, permit the accurate appraisal of performance based on objective criteria related to the job in question. 5 U.S.C. § 4302(c)(1); *Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 21 (2013). Standards must be reasonable, realistic, attainable, and clearly stated in writing. *Towne*, 120 M.S.P.R. 239, ¶ 21. Performance standards should be specific enough to provide an employee with a firm benchmark toward which to aim her performance and must be sufficiently precise so as to invoke general consensus as to their meaning and content. *Id.* Performance standards are not valid if they do not set forth the minimum level of performance that an employee must achieve to avoid removal for unacceptable performance under chapter 43. *Id.* Whether a performance standard is valid, however, is a case-specific inquiry. *Jackson v. Department of Veterans Affairs*, 97 M.S.P.R. 13, ¶ 15 (2004).

*The appellant's performance standards were clearly stated.*

The appellant contends that her performance standards were impermissibly vague. PFR File, Tab 1 at 13. To this end, she challenges the GENISIS timelines, asserting that they were "cryptic" and contained no "notes on use or other instructions."[9] *Id.*; IAF, Tab 14 at 214-16. We find these assertions both unclear and unavailing; indeed, if anything, the GENISIS timelines clarified the appellant's performance standards insofar as they provided her with specific timeframes within which she was expected to complete various work tasks. IAF, Tab 14 at 214-16, 246. In any event, we find that the agency also provided clear guidance both in the appellant's PIP letter and throughout the PIP period, to include counseling, regarding what was expected of her. *E.g., id.* at 22-25; *see Towne*, 120 M.S.P.R. 239, ¶ 23 (reasoning that any lack of specificity with the appellant's performance standards was cured by the agency's provision of clear guidance in the PIP letter and throughout the PIP, and concluding that the agency showed that its performance standards were valid); *see also Diprizio v. Department of Transportation*, 88 M.S.P.R. 73, ¶ 12 (2001) (concluding that the agency provided context to the appellant's performance standards during the PIP by counseling him regarding his deficiencies and identifying the specific problems that he needed to address in order to achieve a minimally acceptable performance rating). Thus, we find unavailing the appellant's assertions regarding the vagueness of her performance standards.

*The appellant's performance standards were objective.*

The appellant avers that her performance standards were not objective. PFR File, Tab 1 at 13. Although her argument in this regard is unclear, it again

---

[9] Relatedly, she argues, among other things, that the GENISIS timelines were "not an officially promulgated regulation of the [a]gency," were not discernably marked as being an official agency document, and contained no "designation of an author." PFR File, Tab 1 at 13.

pertains to the GENISIS timelines.[10]  *Id.*  Performance standards may be more or less objective depending on the position; however, they must be sufficiently specific to provide a "firm benchmark" upon which the appellant must aim her performance.  *Greer v. Department of the Army*, 79 M.S.P.R. 477, 483-84 (1998).  The Board recognizes that positions requiring technical expertise, independence, and discretion are incongruous with performance standards that are strictly objective and may require a degree of subjective judgment that would not be necessary or proper in a position of a less professional or technical nature.  *Id.*

Here, as set forth in the initial decision, the GENISIS timelines "were established based on a trend analysis" and, absent extenuating circumstances, the agency expected these timelines to be met.  ID at 5-6; IAF, Tab 14 at 214-16.  Of note, however, at least one agency employee testified that "it was common for Analysts to miss GENISIS deadlines by a few days."  ID at 26.  Thus, the agency afforded flexibility with the timelines, i.e., a missed deadline was not necessarily indicative of a performance deficiency.  We find no error with this subjectivity.  To this end, the appellant's position required that she work independently on projects with many moving parts and provide technical expertise on numerous issues; indeed, her position was undisputedly complex and required a high degree of discretion.  ID at 4-5; IAF, Tab 35 at 223-25.  Thus, it follows that the deadlines associated with her work assignments required a degree of malleability; indeed an unanticipated, complex scenario might arise that would necessitate more time than that provided by the timelines.  *See Graham v. Department of the Air Force*, 46 M.S.P.R. 227, 236 n.7 (1990) (stating that the degree of specificity and objectivity required of a performance standard varies inversely to the amount of discretion and independence reposed in the employee).  Accordingly, we find the appellant's argument regarding objectivity unavailing.

---

[10]  She asserts as follows:  "there are zero objective criteria on which the Genisis timelines are based."  PFR File, Tab 1 at 13 (punctuation in original).

*The appellant's performance standards were reasonable and attainable.*

The appellant also argues that her performance standards were unattainable.[11] PFR File, Tab 1 at 13-14. In so arguing, she draws the Board's attention to documents wherein she detailed her activities on work assignments that the agency believed she had mismanaged. *Id.* at 14. She also provides a narrative summary of her work on nine assignments, all of which the agency referenced in its removal decision, ostensibly to show that she could not possibly have completed her assignments within the GENISIS timelines. *Id.* at 14-19; IAF, Tab 12 at 59-65, Tab 14 at 214-16. These assertions, however, do not provide a basis to disturb the administrative judge's implicit conclusion that the appellant's performance standards were reasonable, realistic, and attainable. ID at 26; *see Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (same); *see also Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984) (explaining that an administrative judge's failure to discuss all of the evidence of record does not mean that the evidence was not considered), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table).

To support her argument that the GENISIS timelines were unreasonable, the appellant also asserts that other agency employees failed to meet the timelines. PFR File, Tab 1 at 19-20. However, we find no basis to disturb the administrative judge's demeanor-based conclusion that, although other analysts also missed GENISIS deadlines, "the appellant's missed deadlines were more common, longer, and less justified than what was expected and what other

---

[11] Her arguments in this regard again focus solely on the GENISIS timelines. PFR File, Tab 1 at 13-14; IAF, Tab 14 at 214-16. Of note, however, the appellant's inability to meet the GENISIS timelines was not her only noted deficiency in the Planning, Organizing, and Coordinating critical element. IAF, Tab 12 at 65.

[a]nalysts were accomplishing." ID at 26; *see Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1372-73 (Fed. Cir. 2016) (finding that the Board must defer to an administrative judge's demeanor-based credibility determinations, "[e]ven if demeanor is not explicitly discussed"); *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Thus, a different outcome is not warranted.

<u>The appellant challenges the administrative judge's conclusion that she failed to prove her affirmative defense of disability discrimination based on the agency's failure to accommodate; however, none of her arguments warrant reversal of the agency's removal action.</u>

The appellant challenges the administrative judge's conclusion that she failed to prove her affirmative defense of disability discrimination based on the agency's failure to provide her with a reasonable accommodation. PFR File, Tab 1 at 6-12. She argues, among other things, that (1) the administrative judge applied a confusing and incorrect legal standard and (2) the administrative judge erred in concluding that she was not a qualified individual with a disability. *Id*. For the reasons discussed herein, we find that these assertions do not warrant reversal of the agency's removal action.

> *We modify the initial decision to clarify the legal standard applicable to failure to accommodate disability discrimination claims.*

The appellant contends that the administrative judge "failed to even identify, much less discuss or correctly apply, the substantive law applicable to disability discrimination claims in [F]ederal employment." PFR File, Tab 1 at 6. She asserts that the administrative judge's analysis was difficult to follow and neglected to reference the applicable statutes, including the Rehabilitation Act of 1973. *Id*. at 6-7, 9-11. She also alleges that the administrative judge "engineered the process in reverse, first looking at the relationship between the disability discrimination and the removal, and later tracking back to the substantive discrimination issues themselves." PFR File, Tab 4 at 6. We agree that the legal

standard set forth in the initial decision was not a model of clarity; accordingly, we modify the initial decision to clarify the legal standard applicable to failure to accommodate disability discrimination claims.

An agency is required to make reasonable accommodation to the known physical and mental limitations of an otherwise qualified individual with a disability unless the agency can show that accommodation would cause an undue hardship on its business operations. *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 (2014); 29 C.F.R. § 1630.9(a). Reasonable accommodation includes modifications to the manner in which a position is customarily performed in order to enable a qualified individual with a disability to perform the essential job functions. *Miller*, 121 M.S.P.R. 189, ¶ 13. In order to establish disability discrimination, an employee must show the following: (1) she is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) she is a qualified individual with a disability, as defined by 29 C.F.R. § 1630.2(m); and (3) the agency failed to provide a reasonable accommodation. *Id.*

Here, despite a confusing recitation of the applicable law, the administrative judge ultimately applied the above legal standard and found, among other things, that although the appellant had a disability, i.e., generalized anxiety disorder, she failed to show that she was a qualified individual with a disability. ID at 28-30. As discussed in greater detail herein, we discern no basis to disturb this finding; accordingly, the appellant necessarily failed to prove her affirmative defense. *See Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 28 (explaining that a claim of disability discrimination based on an agency's failure to reasonably accommodate that disability requires that the individual be a qualified individual with a disability). To the extent the administrative judge also applied an alternative legal framework to this claim, ID at 26-27, we vacate that portion of his analysis and any findings he made related thereto.

*We discern no basis to disturb the administrative judge's conclusion that the appellant failed to show that she is a qualified individual with a disability.*

The appellant contends that the administrative judge erred in finding that she was not a qualified individual with a disability. PFR File, Tab 1 at 9, Tab 4 at 6. She argues that three of her requested accommodations would have improved her work performance, i.e., a 6-hour workday, reassignment to a vacant Consumer Access Coordinator position, and a new trainer; however, the agency improperly denied her requests for these accommodations, thereby thwarting her ability to demonstrate that she could successfully perform the essential duties of her position with an accommodation.[12] PFR File, Tab 1 at 5, 7, 9-10. She avers that her requests were denied simply because "they were inconvenient to the agency." PFR File, Tab 4 at 7. We find these assertions unavailing.

A qualified individual with a disability is one who can "perform the essential functions of the . . . position that such individual holds or desires" with or without reasonable accommodation. 42 U.S.C. § 12111(8); *Haas*, 2022 MSPB 36, ¶ 28; 29 C.F.R. § 1630.2(m). The essential functions of a position generally refer to the fundamental job duties or the reason for a position's existence as reflected in, among other things, the amount of time spent on a particular task.

---

[12] Relatedly, the appellant asserts that her requests for accommodation were consistent with the applicable regulations; however, the agency "made zero effort" to work with her and instead made "repeated requests for documentation and bureaucratic submissions." PFR File, Tab 1 at 7-9. We find this assertion unsupported by the record. Indeed, the record shows that the information sought by the agency was permissibly tailored to determining whether the appellant had a disability for which she needed an accommodation. *E.g.*, IAF, Tab 35 at 220-21, 234; *see* https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada#requesting (last visited Apr. 5, 2024) (explaining that the employer may ask for reasonable documentation about an employee's disability and functional limitations because the employer is entitled to know that the individual has a covered disability for which she needs a reasonable accommodation). Although the agency ultimately denied all of the appellant's requests, it did so because the requests were not reasonable. *See Clemens v. Department of the Army*, 120 M.S.P.R. 616, ¶ 17 (2014) (explaining that the appellant bears the burden of proving that an accommodation sought is reasonable).

*Henry v. Department of Veterans Affairs*, 100 M.S.P.R. 124, ¶ 10 (2005). A reasonable accommodation means, among other things, modifications or adjustment to the work environment or to the manner or circumstances under which a position is performed and may include job restructuring or the modification of office equipment. *Id.*; 29 C.F.R. § 1630.2(*o*)(1)(ii), (2)(ii). An agency, however, is not required to lower its production or performance standards as a reasonable accommodation. *Byrne v. Department of Labor*, 106 M.S.P.R. 43, ¶ 7 (2007).

Here, the appellant's assertions do not provide a basis to disturb the administrative judge's conclusion that the appellant failed to show that she could perform all of the essential functions of her position, or that there was an accommodation that would have enabled her to do so.[13] ID at 28. To this end, we agree with the administrative judge that the record is devoid of evidence showing that a 6-hour workday would have enabled the appellant to perform all of the essential functions of her position. ID at 28-29. Indeed, the record reflects that on June 8, 2018, before the agency issued its decision regarding the appellant's accommodation requests, the agency permitted the appellant to work 6 hours per day and use 2 hours of sick leave. IAF, Tab 35 at 228. The agency's October 31, 2018 Decision on Reasonable Accommodation Requests, which concluded that the appellant had provided no specific medical reason for this sought accommodation, similarly informed the appellant that she was permitted to request use of her available sick and/or annual leave "when medical needs

---

[13] The appellant avers in her reply that she was performing satisfactorily at the time she submitted her accommodation request. PFR File, Tab 4 at 6. As discussed above, the appellant was rated "fully successful" as a Consumer Access Analyst for the appraisal period ending on September 30, 2018. ID at 11; IAF, Tab 14 at 263. The administrative judge found, however, that the appellant's first-line supervisor had credibly testified that, for a variety of factors, including the appellant's January 7, 2018 start date in this position and her March 23 to May 8, 2018 leave of absence, she had insufficient time within which to fully assess the appellant's performance. ID at 11; *see Haebe*, 288 F.3d at 1301.

warrant."[14] IAF, Tab 30 at 16. Despite these allowances, the appellant was unable to perform all of the essential functions of her position.

Regarding reassignment, we discern no basis to disturb the administrative judge's demeanor-based conclusion that the position to which the appellant sought to be reassigned was unavailable. ID at 9 & n.16, 30; IAF, Tab 30 at 13, 16; *see Haebe*, 288 F.3d at 1301; *see also Jackson v. U.S. Postal Service*, 79 M.S.P.R. 46, 54 (1998) (clarifying that the agency's failure to look for a position as a reasonable accommodation does not relieve the appellant of her burden of ultimately showing that such positions existed and were available). Last, as discussed in the initial decision, the appellant's request for a new trainer for the agency's formal training program was effectively rendered moot by the September 30, 2018 completion of program.[15] ID at 12; IAF, Tab 30 at 16, Tab 35 at 214. Thus, the appellant's arguments do not provide a basis to disturb the administrative judge's conclusion that the appellant failed to show that she is a qualified individual with a disability.[16] Accordingly, we agree that the appellant failed to prove her claim of disability discrimination based on a failure to accommodate. *See Haas*, 2022 MSPB 36, ¶ 28 (explaining that a claim of disability discrimination based on an agency's failure to reasonably accommodate requires that the individual be "qualified").

[14] In essence, although the agency's decision letter indicated that it was denying the appellant's requested accommodation of a 6-hour workday with 2 hours of sick leave, PFR File, Tab 1 at 8; IAF, Tab 30 at 16, the agency functionally granted the request, IAF, Tab 30 at 16. Indeed, the appellant does not allege that the agency improperly denied any leave requests.

[15] On review, the appellant states that "she had not received all components of the training" by this date. PFR File, Tab 1 at 10 n.5. However, the appellant's request for a new trainer referenced the agency's training program, which concluded in September 2018. ID at 7; IAF, Tab 35 at 214. In any event, the appellant did not show that her request for a new trainer was reasonable; indeed, this request appeared to stem from a personality conflict, not the appellant's disability. ID at 7 n.13; *see Clemens*, 120 M.S.P.R. 616, ¶ 17.

[16] Because we so find, to the extent the appellant argues on review that the agency also engaged in disparate treatment disability discrimination, PFR File, Tab 1 at 15, 19-20, her claim is necessarily unavailing, *see Haas*, 2022 MSPB 36, ¶ 28.

The appellant's contention regarding the length of her PIP is unavailing.

The appellant avers that her PIP was not in compliance with the applicable Collective Bargaining Agreement (CBA). PFR File, Tab 1 at 20. To this end, she avers that the CBA requires a PIP to be "60-120 days of time for *each* critical element that is included in the PIP," and, therefore, her PIP should have been at least 120 days long. *Id.* (emphasis in original); IAF, Tab 12 at 22. We find this assertion unavailing. Of note, the appellant did not raise this harmful procedural error affirmative defense before the administrative judge. *E.g.*, IAF, Tab 24 at 4; *see Slavich v. Social Security Administration*, 102 M.S.P.R. 171, ¶ 8 (2006) (indicating that allegations of agency error in applying CBA provisions in chapter 43 actions are treated as claims of procedural error); *DeSousa v. Agency for International Development*, 38 M.S.P.R. 522, 526 (1988) (same); *see also Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (finding that the Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence); 5 C.F.R. § 1201.115(d).

In any event, we find this claim unpersuasive. Pursuant to 5 U.S.C. § 7701(c)(2)(A), the Board will not sustain an agency's decision if the appellant "shows harmful error in the application of the agency's procedures in arriving at such decision." A procedural error is harmful when the record shows that an error by the agency was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Pumphrey v. Department of Defense*, 122 M.S.P.R. 186, ¶ 10 (2015); 5 C.F.R. § 1201.4(r). Here, the administrative judge found credible the testimony of the appellant's first-line supervisor, who explained that she did not grant any PIP extensions beyond the 30-day extension "because it was clear the outcome would not change." ID at 19 n.27; *see Haebe*, 288 F.3d at 1301. Thus, even assuming that the agency should have provided the appellant with a 120-day PIP, we find

that the appellant has failed to show that this error would likely have caused the agency to reach a different conclusion. Thus, the appellant's claim is unavailing.

<u>We affirm the agency's removal action.</u>

We have considered the appellant's remaining arguments; however, we find that none provide a basis to reverse the agency's action. Accordingly, because we agree with the administrative judge's conclusions that (1) the agency proved by substantial evidence that the appellant's performance remained unacceptable in the Planning, Organizing, and Coordinating critical element and (2) the appellant did not prove her affirmative defense, we affirm the removal. *See, e.g., Lisiecki v. Federal Home Loan Bank Board*, 23 M.S.P.R. 633, 646 (1984) (concluding that the Board has no authority to mitigate a removal taken under 5 U.S.C. chapter 43 for unacceptable performance), *aff'd*, 769 F.2d 1558, 1566-67 (Fed. Cir. 1985).

## NOTICE OF APPEAL RIGHTS[17]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file

---

[17] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[18]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[18] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD:           _____
                         Gina K. Grippando
                         Clerk of the Board
Washington, D.C.